The Monmouth Mining & Manufacturing Company

v.

Peter Erling.

*Master and Servant—Negligence of Master—Injury to Servant—Fail-
ure of Employer to Properly Inspect Machinery—Concurring Negli-
gence of Fellow-servant—Improper Remark of Counsel to Jury—Exceed-
ing Time Limit in Address to Jury—Necessity of Exception.*

1. In an action brought by plaintiff to recover damages for an injury
received while engaged in shoveling clay out of a puddling pan, the
accident being caused by the unexpected starting of the machinery in the
pan, this court holds, in view of the evidence, that the same justified
a finding by the jury that the defendant was guilty of negligence in
failing to properly inspect the machinery, and that such negligence was
the proximate cause of the injury.

2. The fact that the negligence of a fellow-servant of plaintiff may
have concurred with that of defendant does not preclude plaintiff's recov-
ery in the case presented.

3. An improper remark of counsel to the jury, *held*, not to have con-
stituted reversible error.

4. The fact that the plaintiff's counsel exceeded his time limit in his
address to the jury can not be taken advantage of where no exception
was preserved.

5. Objections to a clerical error in one count, and to instructions
given under that count are immaterial, no recovery having been had
under that count.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. KIRKPATRICK & ALEXANDER, for appellant.

Mr. J. A. McKENZIE, for appellee.

MR. JUSTICE CARTWRIGHT. This is an action by appellee against appellant on account of personal injuries caused by a defect in machinery furnished by appellant for use in its factory where appellee was employed. The injury occurred while appellee was shoveling clay out of a pan about eight feet wide and fifteen inches deep, used for the purpose of mixing and tempering the clay. The mixing and tempering was chiefly done by heavy iron wheels moving rapidly inside the pan by means of steam power. These wheels were connected with a shaft and so arranged that in revolving in the pan they worked from the center to the circumference and back again. The machinery in the pan was controlled by means of a lever about ten feet long. To the end of the lever at the pan was attached a clutch, and when this clutch was raised by pulling down the outer end of the lever it was thereby disconnected from the machinery which propelled the wheels, and the wheels would stop. Whenever the outer end of the lever was not held down the clutch would fall down into place of its own weight, throwing the machinery into gear, and the wheels would start. Near the outer end of the lever an iron eye-bolt was run through from below, and to the eye of the bolt was attached an iron rod about two feet long, with a hook on its lower end. This rod was used to operate the lever, and when pulled down, the hook at the lower end of the rod was fastened over a hook in a post by the side of the lever, holding the lever down and preventing the machinery from starting. The outer end of the lever when pulled down to stop the machinery was about five feet and nine inches above the floor where the men worked, and when up it was about seven feet and six inches above such

floor.  There were five of these pans in the same room and operated by the same gang of men.  One of the gang, Costello, operated the levers, stopped and started the machinery, looked after the proper tempering of the clay and was a sort of foreman.  The rest of the gang shoveled clay into the pans, and when it was properly mixed and tempered, shoveled it out again.  The work of the men was done while the machinery was stopped, and if the machinery should start while the men were in the pans the most serious results to them were reasonably to be apprehended.  While appellee and another workman, Abrahamson, were in one of the mixing pans in the line of their duty, shoveling out clay, the eye-bolt came out of the lever which controlled the wheels in that pan, allowing the lever to fly up and throw the machinery into gear, whereby the wheels were started and appellee was seriously injured.  For his injuries so received he obtained a judgment for $3,000, upon which the court, after overruling a motion for a new trial, entered judgment.

The ground of liability claimed is the alleged negligence of appellant in not properly caring for the appliance by which the machinery was prevented from running.  It is urged by appellant that the evidence did not establish the charge of negligence on its part.  It is manifest that the safety of the men in the pans depended entirely upon such security as was afforded by the lever, with the rod and hook which held it down.  No exercise of power was required, but only a release of the lever from restraint, to cause the wheels to start.  Any failure to perform the function required of the lever would almost certainly result disastrously to the workmen.  This fact demanded of appellant such reasonable care on its part as was proportioned to the known danger that would arise from any defect or want of repair.  The evidence showed that there was a thread on the end of the eye-bolt above the lever, and that the only method adopted for securing it was by nuts screwed down from above on top of the lever.  Originally there were two such nuts, one above the other, but the upper nut had been

gone from its place for at least two weeks and probably much longer. The remaining nut had worked loose after the upper one was gone, and had been screwed down by Costello. The jar of the machinery tended to work the nut loose, and it was probably due to this cause that it worked off from the bolt and allowed it to come out of the lever. Appellant had a machinist, Carey, whose duty it was to look after the machinery and do the repairing. He was a witness for appellant, and testified that it was his duty to go around and see if anything was out of order, and if so to repair it. To the same effect was the testimony of Aspey, the superintendent. The lever had been in a defective and dangerous condition with respect to the fastening of the eye-bolt for such a length of time that in view of the great importance of having it secure, an inspection should have been made during that time by the machinist charged with that duty. It is clear that no inspection was made, or if made that it was not done with reasonable care. The condition of the nuts would necessarily be noticed by an inspector making a reasonably careful examination to see if the appliance was out of repair. The evidence justified a finding that appellant was guilty of negligence, which caused the injury.

It is also claimed that appellee was not in the exercise of ordinary care. The bolt above the lever was at such a height as not to be noticeable by the shovelers engaged in their ordinary work about the pans without special attention being directed to it; and we think that appellee was not guilty of any want of ordinary care in failing to observe the condition of the nut on the lever, or the absence of the lock nut. But it is said that he had actual notice of the condition of the fastenings, and this claim is based mainly upon alleged statements by him after the accident, as to its cause. He denied any such knowledge and gave a reasonable explanation of any statements admitted by him to have been made as to the cause of his injury, showing that they were made from information received after the accident. The jury were justified in concluding that he did not have actual notice.

It is further urged that the injury was due to the negligence of Costello, who, it is said, was a fellow-servant of appellee. The most that can be claimed in that respect is that Costello had some knowledge of increased danger on account of the condition of the lever, and did not communicate such knowledge to appellant. The loosening of the bolt did not arise from any act of Costello, nor was it his duty to inspect or repair it. The negligence of appellant in omitting to perform its duty of inspection and repair was the proximate cause of the injury. Appellant is responsible for its own negligence to appellee, who was without fault, and if it be conceded that some degree of negligence on the part of Costello concurred with appellant's negligence to produce the injury, appellee would not be barred from a recovery against appellant for its negligence. Cooley on Torts, 560.

In the second count of the declaration the words plaintiff and defendant were transposed in some portions of the count, evidently by a clerical error, which so far as appears, was not discovered before the trial. Appellant pleaded to it and did not call attention to the mistake in any way, but asked the court to instruct the jury to disregard that count, and this the court refused to do. That count charged negligent management of the machinery, and if appellant could take advantage of a purely clerical error of that kind in that way, without notice of the point made, no harm was done it by the refusal to instruct as asked, for the reason that no recovery was sought for negligent management, and no evidence was directed to that point. No claim was made under that count, but the whole strife was on the charges of bad condition and want of repair alleged in the first count. The same question is involved in instructions given for appellee, which it is claimed would authorize a recovery under that count. It is clear that there was no recovery on the charge in that count, and appellant suffered no injury by giving them. The jury were fully and fairly instructed as to the law applicable to the issues presented to and tried before them. The criticisms upon instructions given for appellee are

mainly verbal and do not require extended comment. All that was good law and applicable to the case in the very numerous instructions asked by appellant was given to the jury.

It is next objected that counsel for appellee during the closing argument made improper remarks to the jury concerning appellant as a wealthy corporation and appellee as a poor man. The fact of such an argument being addressed to a jury to procure a verdict or increased damages in any case, materially affects the weight to be given to the finding of the jury, and where the question is presented by the record, we should not hesitate to reverse a judgment, unless satisfied that the action of the jury was right upon the facts.

We think that no injustice was done by the jury in this case, and under the rule in Halloway v. Johnson, 129 Ill. 367, no question is presented by the record concerning the remarks. As in that case, so in this, when the remark was made appellant's counsel at once called the attention of the court and objected to what had been said, and the court said "Counsel must keep within the record." There was no ruling by the court upon the propriety of the remark. The court should pass on the question, and under the authority above referred to, counsel should procure a ruling that may be reviewed. Before the argument was commenced the court limited the time for argument to one hour and thirty minutes on each side. The record also shows that counsel for appellee spoke five minutes longer than the time allotted to him. Counsel for appellant claim that the court overstepped the bounds of authority and propriety in the limitation, and wronged appellant in allowing counsel for appellee to use five minutes more than they did. The record, however, shows neither objection nor exception to the action of the court in these respects. It is essential that an exception should be taken in order to raise the question suggested.

Finding no error in the record the judgment will be affirmed.

*Judgment affirmed.*