## Illinois Central Railroad Company v. Harry Swisher.

1. EVIDENCE—*Rules of Corporations.*—In an action for personal injuries against a railroad company, it is error to permit the introduction of rules of the company, not in force at the time of the injury, for the purpose of showing admissions on the part of the company.

2. SAME—*Rules Relating to Matters Not in Issue.*—On the trial of an action against a railroad company for personal injuries, the introduction on the part of the plaintiff, of rules of the company relating to matters not in issue, is error.

3. PRESUMPTIONS—*As to Evidence Contained in the Record.*—Where the record is silent as to whether documents introduced in evidence were read to the jury, the presumption is that, when regularly admitted in evidence, they were made use of as such and reached the jury in some form.

4. MASTER AND SERVANT—*Assenting to the Hazards of the Employment.*—Where there is an increased hazard in the employment of a fireman upon a passenger train, on account of the use of switches without lamps, and the fireman knows that he is exposed to that hazard every time he goes over the road after dark, and makes no objection, it will be presumed that he assents to it, and that it is one of the risks incident to his employment.

5. FELLOW-SERVANTS—*Engineer and Fireman.*—An engineer and

fireman on a railroad train are fellow-servants, when in the discharge of their ordinary duties, although the engineer is the superior servant. The mere fact that one servant has power to control and direct the actions of another, does not render the master liable for his negligence, unless the negligent act arises out of and is the direct result of the exercise of the authority conferred upon him by the master, over his co-laborers.

6. SAME—*Servants in Authority.*—It is only when the governing servant is acting within the scope of authority conferred upon him to control other servants, that his position affects the question of fellow-servants. His commands, within such scope, are the commands of the master, and not of a fellow-servant, and if the exercise of such power is wrongful the master is liable.

7. SAME—*Knowledge of one Fellow-Servant not Chargeable to Another.*—Where one of two fellow-servants was in possession of knowledge of an insufficient appliance which, if he had communicated to the other, would have enabled him to avoid injury, the fact that he did not communicate such knowledge, does not relieve the master of his liability.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Lee County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed December 10, 1895.

WM. BARGE and H. A. BROOKS, attorneys for appellant, contended that an employe can not recover for any injury suffered in the course of the business about which he is employed, from defective machinery, after he had knowledge of the defects, and continues to work without promise or representations that the defects will be remedied. In such a case it will be presumed he voluntarily assumed the risk and waived whatever obligations rested upon the employer to furnish complete and perfect appliances. Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; C. & N. W. Ry. Co. v. Donohue, 75 Ill. 106; Simmons v. C. & T. R. R. Co. 110 Ill. 340; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244; Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329; I. C. R. R. Co. v. Swisher, 53 Ill. App. 411.

If a person, knowing the hazards of his employment, as the business is conducted, voluntarily continues, without any promise of the master to do any act to render the same less hazardous, the master will not be liable for any injury

he may sustain therein.   Herdman-Harrison Milling Co v. Spehr, 145 Ill. 329; I. C. R. R. Co. v. Morrisey, 45 Ill. App. 127; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244.

When an employe, after having the opportunity to become acquainted with the risks of his situation, accepts them, he can not complain if he is subsequently injured by exposure. C. & E. I. R. R. Co. v. Geary, 110 Ill. 383.

If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury, merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.   Simmons, Admr., v. C. & T. R. R. Co., 110 Ill. 340.

An employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, after he has knowledge of such defects, and continues his work without objections.  C. & A. R. R. Co. v. Munroe, 85 Ill. 25.

If a servant of a railway company knows that the company is operating a class of cars which is unsafe, and he continues in the service, he will assume the risks and hazards of the service, and he can not recover for a personal injury from the use of such a class of cars.  I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; St. Louis & L. E. Ry. Co. v. Britz, 72 Ill. 256.

If using the switches without lamps was dangerous, it was as well known, or by reasonable care and observation could have been, to the plaintiff as to the defendant.  It was not a secret defect, but something that could be as well seen by the plaintiff as by the defendant.  Simmons v. Chicago & Iowa R. R. Co., 110 Ill. 347; Penn. Co. v. Lynch, 90 Ill. 333; Clark v. C., B. & Q. R. R. Co., 92 Ill. 47; I., B. & W. R. R. v. Flanigan, 77 Ill. 365; Naylor v. C. & N. W. Ry. Co., 53 Wis. 661; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; St. L. & L. E. Ry. Co. v. Britz, 72 Ill. 256; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; Wood's Master and Servant, Sec. 326; Wright v. N. Y. C. R. R. Co., 25 N. Y. 562, 566; C., B. &

Q. R. R. Co. v. Smith, Admx., 18 Brad. 119; Buzzell v. Laconia Mfg. Co., 48 Me. 113; Hughes v. Winona & St. Peter R. R. Co., 27 Minn. 137; Priestly v. Fowler, 3 M. & W. 1.

An employe can not recover for an injury, suffered in the course of the business about which he is employed, from defective machinery used therein, after he had knowledge of the defects, and continued his work, it being held that upon becoming aware of the defective condition of such machinery he should desist from his employment; but if he does not do so, and chooses to continue on, he is deemed to have assumed the risk of such defects. Camp Point Mfg. Co. v. Ballou, Adm'r, 71 Ill. 417; Stafford v. C., B. & Q. R. R. Co. 114 Ill. 244.

That as between employer and employe the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery if after his employment he knows of the defect but voluntarily continues in the employment without objection, are familiar rules of law, often recognized by the decisions of this and other courts. Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383; Simmons, Adm'r, v. C. & T. R. R. Co., 110 Ill. 340; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; I., B. & W. R. R. Co. v. Flanagan, 77 Ill. 365; St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 356; Pennsylvania Co. v. Lynch, 90 Ill. 333; *In Arguendo* Honner v. I. C. R. R. Co., 15 Ill. 550; Missouri Furnace Co. v. Abend, 107 Ill. 44; Clark v. C., B. & Q. R. R. Co., 92 Ill. 45, 46; T., W. & W. Ry. Co. v. Black, 88 Ill. 112; C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 141; C. & N. W. Ry. Co. v. Donahue, 75 Ill. 106; I. C. R. R. Co. v. Cox, 21 Ill. 20; Moss et al. v. Johnson, 22 Ill. 633; T. W. & W. R. R. Co. v. Durkin, 76 Ill. 395; Gartland v. T. W. & W. R. R. Co., 67 Ill. 498; Pennsylvania Co. v. Harkey, 93 Ill. 580; Chicago & Alton R. R. Co. v. Bragonier, 119 Ill. 51; Ill. Cen. R. R. Co. v. Jewell, Adm'x, 46 Ill. 99; W. St. L. & P. Ry. Co. v. Deardorff, 14 Brad. 401; I. C. R. R. Co. v. Morrissy, 45 Ill. App. 127; C., B. & Q. R. R. Co. v. Merekes, 36 Ill. App. 195; Kolb v. Sandwich Ent. Co., 36 Ill. App. 419; Evans v. Chess-

mond, 38 Ill. App. 615; U. S. Rolling Stock Co. v. Chadwick, 35 Ill. App. 474; W. St. L. & P. Ry. Co. v. Conkling, 15 Brad. 157; C., B. & Q. R. R. Co. v. Smith, 18 Brad. 119; W. St. L. & P. Ry. Co. v. Gordon, 17 Brad. 65; W. St. L. & P. Ry. Co. v. Thompson, 15 Brad. 117. And other courts hold the same doctrine. Washington, etc., Railroad Co. v. McDade, 135 U. S. 554; Kohn v. McNulta, 147 U. S. 238, 241; Tuttle v. Milwaukee Ry. Co., 122 U. S. 18 ; Fis9k v. Fitchburg R. Co., 158 Mass. 238; Leary v. Boston & A. R. R. Co. 139 Mass. 580; Lovejoy v. Boston & A. R. R. Co., 125 Mass. 79; Ladd v. New Bedford R. R. Co., 119 Mass. 412; Sweeney v. Berlin & Jones Env. Co., 101 N. Y. 520; Appel v. B. & N. Y. & P. R. Co., 111 N.Y. 550; McQuigan v. D. L. & W. R. R. Co., 122 N. Y. 618; N. Y., etc., R. Co. v. Lyons, 119 Penn. 324; Brossman v. Lehigh Valley R. R. Co., 113 Penn. 490; Hayden v. The Smithville Mfg. Co., 29 Conn. 584; Umback v. Lake Shore & Mich. S. R. R. Co., 83 Ind. 191; Naylor v. C. & N. W. Ry. Co., 53 Wis. 661; Shultz v. C. & N. W. Co., 67 Wis. 616; Muldowney v. I. C. R. R. Co., 39 Iowa 615; Burns v. Ch., Mil. & St. Paul Ry. Co., 69 Iowa 456; Doyle v. St. Paul, Minn. & Man. Ry. Co., 42 Minn. 791; Hughes v. Winona & St. Peter R. Co., 27 Minn. 137; Sullivan v. Louisville Bridge Co., 9 Bush (Ky.), 81; Bussell v. Laconia Mfg. Co., 48 Me. 113; M. E. R. R. v. Austin, 40 Mich. 247; McGlynn v. Brodie et al., 31 Cal. 376; Sowden v. Idaho Q. M. Co., 55 Cal. 443; Sweeney v. Cen. Pac. R. R. Co., 57 Cal. 15; M. R. & L. E. R. R. Co. v. Barber, 5 Ohio St. 531; Seymour v. Maddox, 5 Eng. L. & Eq. 265; Priestly v. Fowler, 3 M. & W. 1. Eminent authors so state the law. Wharton on Neg., Sec. 214; Wood's Master and Servant, Secs. 325, 326; Pierce on Railroads, 379 (1881); Bishop, Non-Contract Law, Secs. 675, 677; 2 Thompson on Negligence, 1008.

DIXON & BETHEA and S. B. POOL, attorneys for appellee, contended that the appellant was required to use reasonable care to furnish appellee with reasonably safe switch targets. T. W. & W. R. R. Co. v. Asbury, 84 Ill. 429; C. & N. W. Ry. Co. v. Sweet, 45 Ill. 197; T. W. & W. R. R. Co. v.

Fredericks, 74 Ill. 294; C., A. & St. L..R. R. Co. v. Shannon, 43 Ill. 338; Krans v. White, 8 Ill. App. 583; Pullman Palace Car Co. v. Laack, 143 Ill. 242; C. & R. R. Co. v. Lonergan, 118 Ill. 41; C. & E. I. R. R. Co. v. Hines, 33 Ill. App. 271; 132 Ill. 261.

It is a question of fact for the jury to determine whether appellee knew, or ought to have known, of the defective appliance, and assumed the risk. Wharton's Negligence, Secs. 217, 218; The Garstead Coal Co. v. Turk, 40 Ill. App. 22; McCormick v. Burandt, 136 Ill. 170; Shearm. and Red. on Neg., Secs. 216, 217; T. & St. Ry. Co. v. Bailey, 43 Ill. App. 295; Mining and Mfg. Co. v. Erling, 148 Ill. 529.

The burden of proof on this question was on appellant. Consolidated Coal Co. v. Wombacker, 134 Ill. 63; Whalen v. I. C. R. R. Co., 16 Ill. App. 320; C. & E. I. R. R. Co. v. Hines, 132 Ill. 168.

All questions of negligence, and as to whether employes are fellow-servants—and, in fact, all questions material to this case—are questions of fact for the jury. Three juries and two judges have passed upon them in favor of appellee. The duty of this court is to respect the findings of the juries and circuit judges, and let this verdict stand. It is for the jury to find the facts, and the court the law. Practice Act, Sec. 57; the Lee case, 87 Ill. 454; Terhune case, 50 Ill. 152; Gillis case, 68 Ill. 317; Shevelier v. Seager, 121 Ill. 568.

Ten thousand dollars is small pay for loss of use of hand, injury to leg, almost fracture of skull, and permanent burning of one-third of body. 3 Sutherland on Damages (2d Ed.), Sec. 1241; 2 Sedgwick on Damages (8th Ed.), Sec. 481; Railway Co. v. Friedman, 41 Ill. App. 270; City of Chicago v. Lissith, 43 Ill. App. 480; Ry. Co. v. Fisher, 31 Ill. App. 36; Staris v. Riley, 33 Ill. App. 250; Ry. Co. v. Wilcox, 33 Ill. App. 453; J. N. & A. R. R. Co. v. Bailey, 36 Ill. App. 458; C. & E. I. R. R. Co. v. Holland, 18 Ill. App. 418; C. & A. R. R. Co. v. Murray, 71 Ill. 602; C. & A. R. R. Co. v. Wilson, 63 Ill. 167; I. C. R. R. Co. v. Patricks, 88 Ill. 373; Ry. Co. v. Flynn, 54 Ill. App. 387.

Appellee and his engineer were not fellow-servants under the evidence in this case. The proof was that this engineer had power and authority over his fireman, the appellee, and had the power to cause his discharge. C. M. & S. Ry. Co. v. Ross, 112 U. S., 327; Daniel v. Ches. Ry. Co. (W. Va.), 15 S. E. Rep. 162; the May case, 108 Ill. 288; Consolidated Coal Co. v. Wombacher, 134 Ill. 57.

If the engineer knew that the switch was defective, and even if it be assumed that Trude and Swisher were fellow-servants, Trude's knowledge did not bind Swisher. Monmouth Mining & Mfg. Co. v. Erling, 148 Ill. 521.

MR. PRESIDING JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

A judgment in favor of appellee was reversed on a former appeal and the cause was remanded for a new trial. I. C. R. Co. v. Swisher, 53 Ill. App. 411. He has obtained another judgment. The situation of the switches and tracks at Sublette, and the circumstances under which plaintiff was injured by reason of a switch being left open, causing the passenger train on which he was fireman to leave the main track and run upon a passing track, are stated fully in the former opinion and need not be repeated here.

It is to be remembered that there was no charge or complaint that the open switch, which was the immediate cause of the accident, was in that position through any fault or neglect of the defendant, but it was sought to hold the defendant liable solely on account of a failure to supply the rotary switch with a lamp on the top of the spindle for use in the night time. It was charged that if such a lamp had been supplied, the engineer, in the exercise of reasonable care and caution, could have seen that the switch was open in time to have prevented the train from being diverted from the main track, by stopping the train, but that it was so dark that he could not see the target without the lamp in time to avoid the accident.

On the trial a book of rules, adopted by defendant, was presented, and certain of the rules offered in evidence by

the plaintiff.   The rules were not in force at the time of the accident nor until the ensuing July, but they were admitted in evidence against defendant's objection.  Among them were rules requiring station agents to see that their stations were supplied with the necessary lamps; that when lamps were furnished for switches they must light them at sunset and keep them burning until after sunrise; that they were held responsible for the position of switches, and that before leaving duty each day they must see that the switches were in proper position.

It is claimed that these rules, although not in force, were competent evidence as admissions of the defendant that the lighting of lamps was necessary, and this is the only argument for their competency.   How rules not in force, nor deemed necessary to be put in force at that time, could be treated as an admission of necessity we are not able to see. Again, some of them tended to charge defendant with liability for the position of the switch.   It necessarily appeared on the trial that the switch had been improperly turned through the fault of some one, and that its improper position was the immediate cause of the accident.   The rules tended to charge defendant with that fault by fixing the responsibility for the position of switches upon its servant the station agent, when there was no issue upon that subject.   It was plainly error to admit the rules.   It is said that they were not in fact read to the jury, and the record is silent on that question.   But it must be presumed that when regularly admitted in evidence they were made use of as such and reached the jury in some form.   They certainly were used and treated as evidence, for the court gave an instruction on his own motion that they were not to be considered by the jury as being in force until the first day of July after the plaintiff was injured.   The jury were already informed of the fact stated in the instruction which was not contradicted and could not possibly have considered them in force before July, but in spite of that fact they had been held competent as evidence in the case, and the instruction did not change the situation, but left them to be considered, just as they would have been without it.

The ninth instruction asked by defendant was designed to prevent the jury from charging the defendant with liability for the improper position of the switch, as they might naturally do, unless the issue was defined to them.    The switch was in charge of servants of defendant, and the evidence indicated a good cause of action against some one for its being improperly turned.    The instruction was refused. The part of it which stated that there was no charge or claim by plaintiff of any liability or wrong on that account was proper, and, doubtless, important to defendant.    Other immaterial matters touching the condition of the engine, track and road bed, about which nothing had appeared, were added, and perhaps it was not error to refuse the instruction on that account.    The effect, however, was to leave the rules and other evidence pointing to such liability to have their whole influence with the jury.

It is not now denied that plaintiff assumed as an incident of his contract of employment, the risk arising from the use of switches without lamps if he knew, or by the exercise of ordinary care could have known, that they were so used. There had never been any lamps on switches on defendant's road until rotary switches were substituted for drop lever switches, and there had been none at any time at Sublette and many other places on plaintiff's run.    It was sought to overcome the presumption arising from opportunity to learn that there were no lamps on switches by evidence that plaintiff did not know the condition of this particular switch. He testified that he had never seen it, and that during the seven months that he had run past it he was always oiling valves in coming into the station and always shoveling coal when going out.    Other witnesses testified for him that firemen were generally so employed at such times.    If this were true it would not account for all his time or opportunities for observation.    He must have been able to see something when the train was standing at stations.    But if the statement that he was always so busy shoveling coal or oiling valves in passing this switch that he could not see it is to be taken without any allowances, it does not meet the question,

because the condition of the switch was not peculiar to it. The distinction between a condition existing in a class of appliances and a condition peculiar to a particular appliance is pointed out in I. B. & W. R. R. Co. v. Flannigan, 77 Ill. 365.

In this case the condition was common to switches on that part of defendant's road and for a long distance. Plaintiff had ample opportunity to know, and must have known, that there were no lamps on switches on that part of the road. He had a seat on the left hand side of the cab, with windows for looking out, and was one of the named employes, required by the statute to ring the bell or blow the whistle on approaching highways. He testified that it was his duty to look back and see if the train was all coming, and to keep a lookout ahead when not otherwise engaged; that he rang the bell approaching crossings when he could, and that he had rung it going into Sublette. In the performance of these duties he saw Sublette and the other stations with their switches and surroundings. He had run over that part of the road in the previous winter season, in the early morning and late in the evening, when it was dark and saw no lamps on switches. He did not deny that he knew the general condition of the switches in that respect, but confined his denial to the one that was left open, which was not different from the others. If there was increased hazard in his employment on account of the use of switches without lamps, he knew that he was exposed to that hazard every time he went over the road after dark. Knowing that risk and making no complaint, he assented to it. As he made no objection, it was tacitly understood that the risk was incident to his employment, and it could not be material from what particular one of the class of switches of which he had knowledge, the injury resulted.

At the last trial, the claim of the defendant that it was light enough to enable the engineer, by the exercise of reasonable care, to see the switch-target and stop the train, was very greatly strengthened, and upon that question there was a very clear preponderance of the evidence in favor of the

claim. If that were true, the averments of the declaration would not be sustained and the jury could find no fault in the defendant, since a lamp was unnecessary. Forty-five witnesses, most of whom were disinterested, gave testimony which tended to prove that there was sufficient light, and that the target could be seen as far as a lamp or farther. Much of this testimony rests upon facts which demonstrate its value and correctness. Five of the witnesses were reading newspapers of ordinary print at the time of the accident, four in buildings and one in a car of the train; two women were sewing garments; two others were washing and wiping dishes; three men were playing cards, and another was sorting potatoes in a cellar. All of these were in buildings and with no artificial light. Out of doors one was looking along a row of newly set posts one hundred and fifty rods in length to see whether they were in line; another was filling cups on the engine rods, and others after the accident saw the writing on letters scattered about the ground.

This evidence of physical facts was supported by a great amount of testimony of a general nature as to the condition of light and ability to see objects at the time. Most of the witnesses were residents of the community and not in the employ of defendant, and nothing appeared that would cast suspicion upon their truthfulness.

Their testimony was met mainly by general statements of witnesses such as that it was between daylight and dark, or dusk or pretty near dark, together with evidence as to ability to see and distinguish objects. Some of these witnesses, in hurrying to the wreck, ran into standing water, and attributed this to the condition of the light, but it is easy to see that under those circumstances but little attention would be given to their footsteps. Some of those about the station did not notice which face of the target was turned toward them, but it is beyond question that they never thought of its being turned, and gave no heed to that question. They did not anticipate such a condition as existed, any more than the engineer, who doubtless never thought of such an occurrence, until too late.

It is argued that the red target which was turned toward the engineer could not be distinguished because it was projected against a background of a similar color. What the engineer was required to see before running over the switch was the white target, and it seems that it would show more plainly against a red background. It does not appear that the background affected, unfavorably, ability to discover its absence. Only the white target meant safety for the train and its absence was the signal of danger.

Both parties have argued to some extent the question whether the engineer and fireman were fellow-servants. That question is perhaps not of much importance under the declaration in this case, because the basis of the action is not any alleged act or neglect of the engineer, but solely a fault of the defendant in a positive duty owed to plaintiff as its servant in failing to supply a sufficient switch. The declaration avers due care on the part of the engineer, and that the accident was without his fault. It is, therefore, not a question whether plaintiff could recover for a negligent act of the engineer in running off the main track, on the ground that they were not fellow-servants, and that defendant would be liable for such act. If the fact has any significance in the case, there can be no doubt that the engineer and fireman, in the discharge of their ordinary duties, were fellow-servants, and the claim that they were not so because the engineer was a superior officer of the fireman, is not sound. The fact that one servant occupies a superior position in the line of employment, and has supervision of the work, makes no difference. Cooley on Torts, 562; Clay v. C., B. & Q. R. R. Co., 56 Ill. App. 235; C. & A. R. R. Co. v. May, 108 Ill. 288; W., St. L. & P. Ry. Co. v. Hawk, 121 Ill. 259; Libby, McNeill & Libby v. Scherman, 146 Ill. 540.

In C. & A. R. R. Co. v. May, *supra*, the death of a servant had been caused as the direct result of the improper exercise of authority over him by a foreman. It was held that the mere fact that one servant has power to control and direct the actions of the others would not render the master liable for his negligence, but when the negligent act

I. C. R. R. Co. v. Swisher.

"arises out of and is the direct result of the evidence of the authority conferred upon him by the master over his co-laborers, the master will be liable." He is not, as to the exercise of such a power, a fellow-servant. The other cases are of like import, and the rule declared is that it is only when the governing servant is acting within the scope of authority conferred upon him to control other servants that his position affects the question as to fellow-servants. His commands within such scope are the commands of the master and not of a fellow-servant, and if the exercise of power is wrongful the master is liable. Except as to the exercise of governing power by the engineer, he is a fellow-servant with the fireman. There is no doubt about the rule of law, and when there is no doubt about the facts bringing servants within the rule, there can be but one conclusion.

There is also some question made as to whether plaintiff was bound by the undoubted knowledge of his fellow-servant, the engineer, that the particular switch in question had no lamp. If there were a good cause of action, on account of a failure of duty by defendant toward plaintiff, of which he might lawfully complain, the fact of the engineer's knowledge would not bind him, and neglect to impart the information to him would not relieve defendant, because in that event, defendant would be at the least, one of the two joint wrongdoers, and liable under well settled rules of law. Cooley on Torts, 560; Monmouth Mining and Mfg. Co. v. Erling, 45 Ill. App. 411.

Some other instructions besides the ninth, asked by defendant, were refused, but all that was proper or necessary in them, was stated in those that were given.

For the reason that there was prejudicial error on the trial and that the verdict was against the clear preponderance of the evidence, the judgment is reversed and the cause remanded.